# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware Corporation, AMAZON DIGITAL SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET, INC., a Texas Corporation, <br><br> Defendants. | Case No. 6:19-cv-00388-ADA |

## MOTION TO DISMISS FOR FAILURE TO ALLEGE INFRINGEMENT OF A PATENTABLE CLAIM

*Of Counsel:*

J. David Hadden (CSB No. 176148)
Email:  dhadden@fenwick.com
Saina S. Shamilov (CSB No. 215636)
Email:  sshamilov@fenwick.com
Ravi R. Ranganath (CSB No. 272981)
rranganath@fenwick.com
Vigen Salmastlian (CSB No. 276846)
Email:  vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:      650.988.8500
Facsimile:      650.938.5200

August 19, 2019

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel:  (512) 263-2165
Fax:  (512) 263-2166

*Counsel for Defendants*
AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, LLC, PRIME NOW, LLC, and WHOLE FOODS MARKET, INC.

**TABLE OF CONTENTS**

INTRODUCTION ---------------------------------------------------------------------------------------- 1

FACTUAL BACKGROUND ------------------------------------------------------------------------------ 1

ARGUMENT -------------------------------------------------------------------------------------------- 5

     I.     FRESHUB'S PATENT CLAIMS ARE DRAWN TO THE
          IMPERMISSIBLY ABSTRACT IDEA OF VOICE SHOPPING ------------------- 6

     II.    FRESHUB'S CLAIMS DO NOT DISCLOSE AN "INVENTIVE
          CONCEPT" TO TRANSFORM THEIR INELIGIBLE
          ABSTRACT IDEA INTO A PATENT-ELIGIBLE INVENTION ------------------ 9

CONCLUSION----------------------------------------------------------------------------------------------14

# TABLE OF AUTHORITIES

*Cases:*                                                                    *Page(s):*

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ----------------------------------------------------- 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) -------------------------------------------------------5–6, 9, 13

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ----------------------------------------8, 10, 12–13

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018) ------------------------------------------- 5, 13–14

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ------------------------------------------------------------ 5

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ----------------------------------------------------14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) ------------------------------------------------- 6

*Elec. Power Grp. v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ----------------------------------------- 6–7, 10, 12

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) --------------------------------------------------- 6

*IPA Techs., Inc. v. Amazon.com, Inc.*,
    307 F. Supp. 3d 356 (D. Del. 2018) ----------------------------------------- 8, 10, 13

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) (Bryson, J.)----------------------------------14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ------------------------------------------------------- 5, 13–14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ------------------------------------------------ *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)------------------------------------------------ 10, 12

*VOIT Techs., LLC v. Del-Ton, Inc.*,
    757 F. App'x 1000 (Fed. Cir. 2019)-------------------------------------------8– 9

**TABLE OF AUTHORITIES**
**(CONTINUED)**

*Page(s):*

*VOIT Techs., LLC v. Del-Ton, Inc.*,
   No. 5:17-CV-259-BO, 2018 WL 385188 (E.D.N.C. Jan. 11, 2018)------------------------ 9

**Statutes:**

   Patent Act Section 101 -------------------------------------------------------------------------- *passim*

**Other Authorities:**

   Fed. R. Civ. P. 12(b)(6) ------------------------------------------------------------------------- 1, 14

## INTRODUCTION

This is a patent case.  The patents Freshub asserts are directed to the abstract idea of voice shopping.  They claim the result of adding an item to a user's shopping list, but do not claim any specific technological solution for achieving it.  Instead, their claims recite conventional computer functions such as "receiving" a spoken order, "translating" it to text, "matching" it to database entries, "identifying" a corresponding item, "adding" the item to a list, and "displaying" the list to the user.  The claims do not disclose any new or improved technology:  no new speech recognition technology, no new natural language processing technology, no new user interface or display technology, no new means of communication.  Under a long line of Federal Circuit decisions, Freshub's results-focused claims recite ineligible subject matter under § 101 and, thus, the Court should dismiss this case under Rule 12(b)(6).

## FACTUAL BACKGROUND

In this case plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") assert four related United States patents—Nos. 9,908,153 ("the '153 patent"), 10,213,810 ("the '810 patent"), 10,232,408 ("the '408 patent"), and 10,239,094 ("the '094 patent") (collectively the "Asserted Patents")—against Amazon.[1]  The patents share an identical specification and are identically titled "Systems and methods for scanning information from storage area contents."[2]  They all claim priority to U.S. Patent No. 9,821,344 ("the '344 patent"), which shares the same specification and title.  Freshub does not assert the '344 patent in this case.  (Dkt. 1 ("Compl.") ¶ 11).

---

[1] For convenience, Amazon refers collectively to all defendants, Amazon.com, Inc., Amazon Digital Services, LLC, Prime Now, LLC, and Whole Foods Market, Inc.  Whole Foods Market, Inc. is a holding company with no operations (including none relevant to this case).  It is not a proper defendant in this case.

[2] Unless otherwise indicated, all citations to the '153 patent specification also appear in the specifications of the other asserted patents.

The specification describes that at the time the patents were filed perishable items, with "faintly or poorly printed" expiration dates, were "often densely packed into a refrigerated storage unit," preventing users from "conveniently monitor[ing] the expiration dates." ('153 patent at 1:20–26). To address this problem, the patents propose a system for reading tags on refrigerated items and prompting the user to use or replace the items before their expiration dates. (*Id.* at 1:35–37; Abstract). Accordingly, the non-asserted '344 patent claims an "electronic refrigeration system" that captures digital images of the stored refrigerated items and alerts users of any upcoming expiration dates. ('344 patent, cls. 1–7). The claims of the four asserted patents, however, are different.[3]

Claim 20 of the '408 patent is representative, and recites as follows:

A computer-implemented method, the method comprising:

*receiving* over a network at a network interface *a digitized order of a user* from a remote system configured to receive user spoken words, the remote system comprising a microphone, a wireless network interface, and a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;

*translating*, using a processing system comprising at least one processing device and configured to perform translation of voice orders to text, at least a portion of *the digitized order to text*;

matching, using the processing system, the text, translated from the digitized order, to a text description associated with a unique product identifier;

based at least in part on the unique product identifier associated with the text description matched to the text translated from the digitized order, *identifying*, using

---

[3] The prosecution history sheds light on this deviation. The applicant filed the application for the '344 patent in 2005, but abandoned its prosecution in 2012. *Five* years later, however, in 2017—after Amazon released its acclaimed Echo smart speaker working in conjunction with Amazon's revolutionary Alexa Voice Service—the applicant suddenly revived the application, claiming, remarkably, that it was *inadvertently* abandoned for all those years. The applicant then rushed several continuation applications through the Patent Office and those eventually issued as the patents asserted in this case. Their claims are not directed to the electronic refrigeration system, but instead are merely drawn to a generic "voice processing system."

the processing system, *an item corresponding to the text*;

causing the *identified item to be placed on an item set* associated with the user; and

enabling the item set, including at least the identified item, *to be displayed via a user display remote* from the processing system.

In other words, claim 20 recites : (1) receiving a spoken order from a user, (2) translating it to text, (3) identifying the item the user requested, and (4) adding the item to the user's "set," or list, for display. The other independent claims in each of the asserted patents recite the same functions performed by a "voice processing system." (*See also, e.g.*, '408 patent, cls. 17, 30; '810 patent, cls. 1, 17; '094 patent, cls. 1, 20). Claim 1 of the '153 patent, for example, recites a "voice processing system" comprised of (1) a first system configured to *receive* a user's spoken words, (2) a first computer that receives the user's verbal order and transmits the order to a remote computer system, and (3) a computer system that *translates* the order to text, *identifies* an item corresponding to the order, adds the item to a list, and *displays* the list to the user.

The support for these claims appears in just two columns of the fourteen-column specification, which include a description of Figure 8, reproduced here. ('153 patent, 13:56-14:44.) The specification's discussion of this figure confirms that the claimed functions are performed by conventional components described in the context of the refrigerator of Figure 2. ('153 patent at 14:8–23 (tying microphone 203, system 202, and remote system 214 to states 804, 806, and 808)), 12:16–22 (micro-



FIG. 8

3

phone 203 and system 202 are mounted to refrigerator 208)).  At the first step of Figure 8, the user orders an item by a spoken request.  The user does so through a generic user interface such as "activating" a button or using a voice command.  ('153 patent at 8:9–11, 8:21–25).  The system uses a "voice recording device[]" with a conventional digital or analog memory to record the user's request.  (*Id.* at 8:9–11, 17–25, 35–36).  Next, the system transmits the user's recorded request to a "remote system, such as remote system 214" (*id.* at 14:10–12) using a conventional network, "such as the Internet" (*id.* at 8:30–31).  Once received, the remote system translates the order to text.  (*Id.* at 14:12–15).



The remote system is illustrated as a black box in Figure 2 of the patents.  The specification confirms that to translate the order to text, the remote system relies on voice recognition technology that predated the patents, such as "grammar constrained recognition and/or natural language recognition." (*Id.* at 14:15–17).  The patents do not disclose any new voice recognition or natural processing technology to perform the translation.

The remaining steps are performed by similarly conventional technology.  After allowing the user to verify the translation or manually correct it (*id.* at 14:18–26), the system transmits the order to providers of the requested items.  (*Id.* at 14:27–30).  This can be done via any conventional communication method—such as "web site, telephone, fax, [or] short messaging system."  (*Id.* at 8:56–62).  Finally, the system displays information to the user to authorize an order of the item from a provider, and then orders the item.  (*Id.* at 14:34–39).  Again, this is done via a conventional display device.  (*Id.* at 13:2–6, 13:43–44, Fig. 7).  The patents thus claim nothing more than the

abstract idea of voice shopping using generic components and existing technologies.

None of the claims of the Asserted Patents discloses a specific technological solution for improving computer technology. The patents claim nothing but the bare idea of voice shopping—that result itself, achieved using generic computing devices communicating over a generic network.

## ARGUMENT

Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. As the Supreme Court has long recognized, "this provision contains an important exception: Laws of nature, natural phenomena, and abstract ideas," which form the "basic tools of scientific and technological work," may not be patented. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted).

This case concerns the "abstract ideas" category that embodies "the longstanding rule that '[a]n idea of itself is not patentable.'" *Id.* at 218 (citation omitted). The reason for this rule is important: "[M]onopolization of [ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Accordingly, ideas belong to the "storehouse of knowledge . . . free to all . . . and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citation omitted).

Eligibility under § 101 can be decided based on the pleadings alone. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1378 (Fed. Cir. 2018). In doing so, courts must take a two-step approach. *Alice*, 573 U.S. at 217. First, a court must ask whether the claims are directed to a patent-ineligible abstract idea. *Id.* And if they are, the court must then decide whether the claims add an "inventive

concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'"  *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73).  Unless these additional elements add something significant to the abstract idea, the claims are ineligible.  *Id.*  In applying the *Alice* test, the Court need not separately analyze each claim, and can instead look to representative claims.  *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1351-52 & n.1 (Fed. Cir. 2016).[4]

## I.    FRESHUB'S PATENT CLAIMS ARE DRAWN TO THE IMPERMISSIBLY ABSTRACT IDEA OF VOICE SHOPPING.

Freshub's patents claim the idea of voice shopping, but disclose no specific technological solution for doing so.  A long line of governing Federal Circuit cases makes clear that patents—like Freshub's—that fail to disclose a specific solution for the problem they purport to solve fail the first step of the *Alice* test.  Indeed, the Federal Circuit has repeatedly explained that claims "directed to a result or effect that itself is the abstract idea and merely invoke[] generic processes and machinery" are ineligible under § 101.  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611–12 (Fed. Cir. 2016) (to claim eligible subject matter under § 101 a patent must recite "a specific improvement to computer functionality," rather than simply the "use of conventional or generic technology in a nascent but well-known environment").  In *Two-Way Media*, the Federal Circuit invalidated patents related to "a system for streaming audio/visual data over a communications system like the internet" because the claims recited "functional results"—*e.g.*, converting,

---

[4] Indeed, in *Content Extraction*, the district court found 242 claims from four patents ineligible under Section 101 based on its analysis of two representative claims, even where the parties had not agreed beforehand on the set of representative claims.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  The Federal Circuit rejected the patentee's contention that the district court erred by failing to address each claim individually, finding that such an analysis was "unnecessary."  *Id.* at 1347-48.

routing, controlling, monitoring, and accumulating records—but failed to "sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1333, 1337–38. Freshub's claims are no different.

Freshub's claims recite functional steps, implemented using generic components and existing technology, to receive and translate a spoken order and display a list of items for ordering. They claim no particular algorithm or software to accomplish any of the functions.  Nor does the specification describe any such solution.  Instead, the fourteen-column specification extensively discusses and focuses on management of refrigerated food storage, and relegates discussion of the abstract idea that the patents actually claim to a high-level description in just a few columns.  ('153 patent at 8:16-9:14, 13:56-14:39.)  Those brief references in the specification do not describe *how* the generic claimed components carry out the claimed functions.  Thus, rather than claiming or describing some technical means to implement the purported invention, the patents describe instead only functional steps.  (*See, e.g.*, *id.* at 14:9-11 ("The system then digitizes and records the spoken order in a file . . . .).)  Indeed, in its complaint, Freshub admits that its claims are directed to the high-level process of collecting, managing, and displaying shopping list items based on a user's voice command and then providing that list of items to the user or to a provider for ordering. (Compl. ¶¶ 17, 20, 23, 26).  These generic functions are abstract and ineligible as a matter of law. *Elec. Power Grp.*, 830 F.3d at 1354 (invalidating claims directed to "a process of gathering and analyzing information of a specified content, then displaying the results," rather than "any particular assertedly inventive technology for performing those functions").

And although the Freshub patents purport to claim a "voice processing system" that translates the user's verbal orders into text, the patents do not disclose any such invention.  They merely

claim a black box for performing the claimed voice processing functions.  The specification describes that a generic "remote system performs voice recognition on the order in order to interpret the spoken order and converts the spoken order into text." ('153 patent at 14:12-15.)  But, again, it describes no technical solution or any improvement to existing voice recognition technologies to accomplish this function.  In this respect, the claims thus do not materially differ from those rejected by the Federal Circuit in *Apple, Inc. v. Ameranth, Inc*.  In *Ameranth*, the Federal Circuit invalidated claims directed to using voice capture to generate menus.  842 F.3d 1229, 1244–45 (Fed. Cir. 2016).  The Federal Circuit held the claims ineligible despite the reference to "voice capture technologies" because the patents did not disclose "how these elements were to be technologically implemented." *Id.* at 1245.  The same is true here.  Creating a "menu" is no different than creating a "shopping list."  In both cases the patents "claim[] no more than the use of existing [] voice capture technologies using a computer system." *Id.*  Indeed, a sister court in Delaware recently invalidated similar claims "directed to the abstract idea of transmitting electronic data to a user in response to a spoken request from the user," where the claims, like Freshub's, were "drafted so broadly as to cover any method that can achieve navigating electronic databases by spoken natural language input." *IPA Techs., Inc. v. Amazon.com, Inc*., 307 F. Supp. 3d 356, 363–64 (D. Del. 2018).  As these cases make clear, voice recognition and natural language processing are complex technological problems that demand a technological solution to pass muster under § 101.  Freshub's patents disclose no such solution.

Stripped of the voice processing component of the claims—for which Freshub deserves no credit in the § 101 analysis—the claims merely recite receiving a user's request for an item and ordering it from the provider or adding it to the user's shopping list.  The Federal Circuit recently invalidated claims directed to just that idea. *VOIT Techs., LLC v. Del-Ton, Inc*., 757 F. App'x

1000, 1003–04 (Fed. Cir. 2019).  The patent at issue in *VOIT* was directed to "'a method of buying and selling an item' through the internet."  *VOIT Techs., LLC v. Del-Ton, Inc.*, No. 5:17-CV-259-BO, 2018 WL 385188, at *1 (E.D.N.C. Jan. 11, 2018) (citing U.S. Patent No. 6,226,412 at 11:5), *aff'd*, 757 F. App'x 1000 (Fed. Cir. 2019).  Like Freshub's claims' reference to voice capture, the patent at issue in *VOIT* referenced image compression, but it conceded that this could be accomplished using available techniques.  *Id.* at *3.  As the district court observed, "[w]hat's left is the idea of using these concepts in order to sell products.  That is to say, rather than being an 'asserted improvement in computer capabilities,' the patent deals with an 'abstract idea for which computers are invoked merely as a tool.'"  *Id.* (citation omitted).  The Federal Circuit agreed.  *VOIT Techs.*, 757 F. App'x at 1003.  The same is true, here.  Freshub's patents therefore fail step one of the *Alice* test.

## II.   FRESHUB'S CLAIMS DO NOT DISCLOSE AN "INVENTIVE CONCEPT" TO TRANSFORM THEIR INELIGIBLE ABSTRACT IDEA INTO A PATENT-ELIGIBLE INVENTION.

It is well-settled that neither generic computer technology nor "well-understood, routine, conventional" or "purely functional" elements can supply the required inventive concept to save claims directed to an abstract idea at *Alice* step two.  *Alice*, 573 U.S. at 221–26 (citing *Mayo*, 566 U.S. 72–73, 77, 82).  Freshub's patent claims recite nothing more than generic computer components performing functions inherent to the abstract idea of voice shopping itself.  They are not inventive.

Claim 20 of the '408 patent, for example, recites receiving a "digitized order of a user" over a network.  The patents describe that this is accomplished through a conventional network, such as the Internet.  ('153 patent at 8:9–11, 36–38).  The "digitized" nature of the order is inherent to the function itself—a file transmitted over the Internet must be "digital."  *See Two-Way Media*,

874 F.3d at 1341 (Fed. Cir. 2017) (invaliding claims where "nothing in these claims requires any-thing other than conventional computer and network components operating according to their or-dinary functions").  The order is received from a remote system comprised of "a microphone, a wireless network interface, and a digitizer coupled to the microphone."  These, too, are conven-tional.  (*See, e.g.*, '153 patent at 8:17–21, 35–36 (may use a "plurality of voice recording de-vices")).  That the "processing system" is configured to translate the voice order to text is also not inventive, because this can be accomplished through existing "grammar constrained recognition and/or natural language recognition" technologies.  ('153 patent at 14:15–17); *see Ameranth*, 842 F.3d. at 1245 (finding nothing inventive in claimed "voice capture" since patents did not disclose how it was to be implemented); *IPA Techs.*, 307 F. Supp. 3d at 370 (holding that conventional speech recognition technologies did not satisfy requirement for inventive concept).  And the patent claims' recitation of several computing devices—"first system," "first computer," "the computer system," "second computer," which are merely conventional computing components described as performing claimed conventional functions—cannot save the claims.  *See, e.g.*, *Ameranth*, 842 F.3d. at 1242–43 (citation omitted) ("It is not enough to point to conventional applications and say 'do it on a computer.'"); *Two-Way Media*, 874 F.3d at 1338 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention.").  Indeed, the claims merely recite *receiving* a spoken order, *translating* it to text, *identifying* what item the user requests, and then adding that item the user's list for *display* or eventual ordering.  These are inherent functions in the abstract idea itself. "[C]onventional steps, specified at a high level of generality,"—like these—"[are] insufficient to supply an inventive concept."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (citation and internal quotation marks omitted); *Elec. Power Grp.*, 830 F.3d at 1355 (generic steps

of gathering and analyzing information and displaying results are non-inventive).

The other independent claims are non-inventive variations of the same high-level functions as claim 20 of the '408 patent.  (*See, e.g.*, '408 patent, cls. 1, 30 (reciting "receiv[ing] . . . a digitized" order or communication, "translat[ing] . . . to text," "identify[ing] an item," and "add[ing]" the item to a list that is "displayed"); '810 patent, cls. 1, 17 (reciting "receiv[ing] . . . a digitized order," "translat[ing] . . . to text," "identify[ing] an item," and "including the identified item in a set" that is "displayed"); '094 patent, cls. 1, 20 (reciting "receiving . . . a digitized spoken user order," "translating . . . to text," "identifying a corresponding item," and adding/including "the identified corresponding item" to/in a list that is "displayed"); '153 patent, cl. 1 (reciting "receiv[ing] . . . the digitized order," "translat[ing] . . . to text," "identify[ing] an item," and "add[ing] the identified item to a list" that is "displayed")).

And the dependent claims add nothing inventive either.  Some recite alternative but equally generic components for performing the same functions described above—such as a website (*see, e.g.*, '153 patent, cl. 6; '408 patent, cl. 8; '094 patent, cl. 3; '810, cls. 8, 22), a telephone (*see, e.g.*, '153 patent, cl. 7; '408 patent, cl. 9; '094 patent, cl. 4; '810, cls. 8, 22), and short messaging system (SMS) (*see, e.g.*, '153 patent, cl. 8; '408 patent, cl. 10; '094 patent, cl. 5; '810, cls. 8, 22).  Such components cannot save the claims.  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) ("[T]he dependent claims . . . all recite functions that are not inventive but simply constitute particular choices from within the range of existing content or hard-ware . . . .").  Others recite the routine function of storing a user's spoken request or item description as audio (*see e.g.*, '153, cls. 3, 4; '810, cls. 13, 14, 26, 27; '408 patent, cls. 15, 16, 28) through use of an unspecified "first system" or "voice output system" (*see, e.g.*, '153, cl. 5).  Some recite

11

use of a generic, black-box "second computer system" (*see, e.g.*, '094, cls. 13–16, 18) or admittedly generic and conventional "grammar constrained recognition and/or natural language recognition" to translate the voice order to text (*see, e.g.*, '094 patent, cls. 19, 24).

Other dependent claims recite that the system may use additional information to identify the requested item, such as, "the user's past purchase history" (*see, e.g.*, '153 patent, cl. 9; '810 patent, cl. 6; '094 patent, cl. 6), "location information of the user" (*see, e.g.*, '810 patent, cls. 2, 18; '408 patent, cls. 2, 21; '094 patent, cls. 7, 22), "preference information of the user" (*see, e.g.*, '810 patent, cls. 3, 18; '408 patent, cls. 3, 22; '094 patent, cls. 8, 23), other "types of items being purchased by the user" (*see, e.g.*, '810 patent, cls. 5, 19; '408 patent, cls. 5, 23), or user verification (*see, e.g.*, '810, cl. 15, 28; '408, cl. 17, 29).   But these claims, too, simply describe the *idea* of using this information, not any specific technical solution or improvement to existing technologies or voice recognition algorithms, to do so.  *See Elec. Power Grp.*, 830 F.3d at 1355 ("merely selecting information, by content or source, for collection, analysis, and display" did not save claims at step two).  Other dependent claims add insignificant activity inherent to shopping.  For example, a user can "add a reminder" for an item ('153 patent, cl. 10; '810 patent, cls. 11, 25; '408 patent, cls. 13, 27; '094 patent, cl. 9), choose additional or alternative items ('810 patent, cls. 9, 10, 23, 24; '408 patent, cls. 11, 12, 26), add items to a list ('810 patent, cl. 29) or a shopping cart ('408 patent, cl. 19), select from "a plurality of providers" ('810 patent, cl. 16; '408 patent, cl. 18), and place an order for an item ('094 patent, cl. 18).  *See, e.g.*, *Ameranth*, 842 F.3d at 1242 (claims reciting "specific type[s] of ordering" amounted to "insignificant post-solution activity" that did not supply inventive concept); *Ultramercial, Inc.*, 772 F.3d at 716 ("Adding routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea

into patent-eligible subject matter.").

The remaining dependent claims recite conventional and well-known elements.  For example, identifying an item by "an item name" ('153 patent, cl. 2; '094 patent, cl. 11; '810, cl. 12; '408, cl. 14), identifying a "SKU" for an item ('153 patent, cl. 11; '094 patent, cl. 10), adding a "reminder" for an item ('153 patent, cl. 10; '094 patent, cl. 9; '810, cls. 11, 25; '408, cl. 13), using an item to "offer the user an additional or alternative item" ('810, cls. 10, 23, 24; '408, cls. 11, 12), and limiting the "second computer" to being "wall mounted" ('094 patent, cl. 15) or a "refrigerator" ('094 patent, cl. 14).  None is inventive.  *See Mayo*, 566 U.S. at 79 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by . . . adding insignificant post-solution activity.") (quotations omitted); *Ameranth*, 842 F.3d. at 1244 ("insignificant post-solution activity" did not save claims).

Nor is there anything inventive about the ordered combination of the claim steps.  Receiving a voice order is inherent to the abstract idea of voice shopping.  One must first receive the order to translate it and identify what the user is requesting.  And only once that item is identified can it be added to a list or ordered.  The recited functional steps are thus inherent and logically required to accomplish the basic and abstract concept of voice shopping.  *See Two-Way Media*, 874 F.3d at 1339 ("The claim uses a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result."); *see also IPA Techs.*, 307 F. Supp. 3d at 372 (observing that "it is impossible to interpret a spoken request without receiving one, and impossible to refine a query that has not yet been constructed").  Freshub's patent claims thus fail also at *Alice* step 2.[5]

---

[5] Although the second step of the *Alice* test may present an underlying factual dispute in some cases, *Berkheimer*, 890 F.3d at 1370, this is not one of those cases.  Freshub alleges no facts that create a dispute as to whether a claim element is well-understood, routine, and conventional.  Nor

Freshub's patents are directed to the abstract idea of voice shopping.  But they claim no inventive application of this idea.  Like those held invalid in many cases before, Freshub's claims "simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps" under the "argot of invention." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (Bryson, J.).  Freshub's claims threaten to remove large swaths of technology, both present and future, from the public domain while contributing nothing to the public store of knowledge. They are unduly preemptive and invalid under § 101.  *See Mayo*, 566 U.S. at 88 ("[T]he underlying functional concern here is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor.").

## CONCLUSION

The patent claims Freshub assert in this action are invalid for claiming the patent-ineligible abstract idea of voice shopping.  Accordingly, Amazon respectfully requests the Court dismiss Plaintiffs' complaint with prejudice under Rule 12(b)(6).

/ / /

---

can it.  Factual allegations that contradict the patent claims or specification will not save the patents, even at the pleading stage.  *Id.* at 1371 ("[W]here the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute"); *see also Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019) (reiterating that "any allegation about inventiveness, wholly divorced from the claims or the specification," cannot defeat a motion to dismiss).

Respectfully, submitted,

/s/ Barry K. Shelton
Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel:  (512) 263-2165
Fax:  (512) 263-2166

*Of Counsel:*

J. David Hadden, CSB No. 176148
Email:  dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
Email: sshamilov@fenwick.com
Ravi R. Ranganath
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
Email: vsalmastlian@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.520

*Counsel for Defendant*
AMAZON.COM, INC., AMAZON DIGITAL
SERVICES, LLC, PRIME NOW, LLC; and
WHOLE FOODS MARKET, INC.

August 19, 2019

15

## CERTIFICATE OF SERVICE

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all other parties who have appeared in this action on the date of such service.


*/s/ Barry K. Shelton*
Barry K. Shelton